IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARILYN MOFFAT, KAREN KEMMIS,
DANIELLE PARKER, and MARK RICHARDS,

                Plaintiffs,

v.

ACADEMY OF GERIATRIC PHYSICAL THERAPY,

                Defendant.

OPINION & ORDER

15-cv-626-jdp

---

Plaintiffs Marilyn Moffat, Karen Kemmis, Danielle Parker, and Mark Richards claimed ownership of copyright in course materials used by defendant Academy of Geriatric Physical Therapy. Plaintiffs asserted copyright infringement claims, and the Academy asserted counterclaims for breaches of contract and fiduciary duty. The court granted summary judgment in favor of the Academy and dismissed the copyright infringement claims, Dkt. 61, and the parties stipulated to dismiss the counterclaims, Dkt. 88.

The Academy has filed a motion for attorney fees and a bill of costs. Dkt. 92 and Dkt. 93. The court will order costs in the amount requested by the Academy. The court will grant the Academy's motion for attorney fees, but it will not award the full amount requested. The court finds both the hourly rates and the amount of time spent by counsel to be reasonable. But the court will reduce the fee award slightly to reflect that counsel's work on the Academy's counterclaims does not perfectly mirror the work required to defend plaintiffs' copyright claims. More significantly, the court will also reduce the fee award by one-third, to reflect the Academy's contribution to the poor contracting that led to this dispute in the first place. The

Academy is awarded attorney fees in the amount of $177,203.95 and costs in the amount of $8,497.01.

The court will deny Academy's motion under 28 U.S.C. § 1927 for sanctions against plaintiffs' former counsel. It will grant plaintiffs' motion to file a sur-reply. Dkt. 115.

ANALYSIS

A. Attorney fees

   1. Grounds for attorney fees

Under the Copyright Act, a district court "may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The Act's language "clearly connotes discretion, and eschews any 'precise rule or formula' for awarding fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 (1994)). But a district court's discretion is cabined by two principles. First, the court cannot grant "attorney fees as a matter of course." *Id.* (quoting *Fogerty*, 510 U.S. at 533). Instead, the "court must make a more particularized, case-by-case assessment." *Id.* Second, the court "may not treat prevailing plaintiffs and prevailing defendants any differently." *Id*. Defendants should be "encouraged to litigate [meritorious defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id*. (quoting *Fogerty*, 510 U.S. at 527). In essence, "[u]nlike many fee-shifting statutes, which entitle prevailing plaintiffs to recover fees as a matter of course but allow prevailing defendants to recover fees only if the suit was frivolous, [the Copyright Act] treats both sides equally and allows an award in either direction." *Riviera Distribs, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008).

Within these two limiting principles, a district court may consider several discretionary factors: (1) frivolousness of claims or defenses; (2) motivation of the parties; (3) objective unreasonableness; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534, n.19). This is not an exclusive list of factors, and a district court has wide discretion to consider "the totality of circumstances." *Id*.

In the Seventh Circuit, "the two most important considerations . . . 'are the strength of the prevailing party's case and the amount of damages or other relief the party obtained.'" *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014) (quoting *Assessment Techs. of Wis., LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004)). This means that "[i]f the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees." *Id*. (quoting *Assessment Techs.*, 361 F.3d at 436). On the other hand, if "the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding attorneys' fees is compelling." *Id*. The Seventh Circuit has held that a prevailing defendant, who by definition does not obtain monetary relief, is "entitled to a 'very strong' presumption in favor of receiving attorney fees." *Id*. (quoting *Assessment Techs.*, 361 F.3d at 437). This rule avoids forcing a defendant to enter into "a nuisance settlement" and abandon meritorious defenses. *Id*. (quoting *Assessment Techs.*, 361 F.3d at 437).

With this analytical framework in mind, the court turns to the factors that are salient in this case.

### a. The Academy prevailed, but as the defendant makes no recovery

The Academy is plainly the prevailing party here because the copyright claims at the heart of this case were decided in its favor. The Academy's counterclaims largely, though not entirely, mirrored plaintiffs' claims. Thus, the dismissal of the relatively minor counterclaims does not diminish the Academy's status as the prevailing party. But the Academy makes no affirmative recovery here, so under the Seventh Circuit's guidance, the Academy is entitled to a presumption that it should recover its fees.

Plaintiffs contend that the Seventh Circuit's view is contrary to *Kirtsaeng*, where the Supreme Court explained that a district court "may not treat prevailing plaintiffs and prevailing defendants any differently." *Kirtsaeng*, 136 S. Ct. at 1985. In *Kirtsaeng*, one of the issues was whether a district court should give "substantial weight" to the reasonableness of the losing party's position. *Id*. at 1988-89. Although the Supreme Court concluded that a district court could give such substantial weight, the Court nonetheless remanded the case because the Second Circuit had "a presumption against granting fees" when the losing party's position was reasonable. *Id*. Such a presumption, the Court explained, went "too far in cabining how a district court must structure its analysis and what it may conclude from its review of relevant factors," and the district courts in the Second Circuit had turned "substantial weight" to "nearly dispositive weight" when evaluating fee petitions. *Id*.

*Kirtsaeng* makes it clear that a neither side is entitled to a *dispositive* presumption on the fee question. But *Kirtsaeng* does not contradict the Seventh Circuit's guidance that a prevailing defendant who takes nothing should generally be entitled to fees. This notion is really just the converse of the idea that a prevailing plaintiff who makes a recovery that is far less than the expense of the litigation should also generally be entitled to fees. So both plaintiffs and

4

defendants are treated equally in this regard. It's also worth pointing out that the Seventh Circuit reaffirmed the presumption rule in *Klinger*, 761 F.3d at 791, after the Supreme Court had held that "[p]revailing plaintiffs and prevailing defendants are to be treated alike," in *Fogerty*, 510 U.S. at 534. So the Seventh Circuit recognized the obligation to treat both sides alike when it reaffirmed the presumption rule.

The court concludes that as a prevailing defendant who recovered nothing, the Academy is presumptively entitled to an award of attorney fees. But that presumption is not dispositive, and we are far from the end of the analysis.

### b. Strength of plaintiffs' case

The strength of plaintiffs' case is a factor that weighs in favor of awarding fees to the Academy. Plaintiffs' claims were facially plausible because the consideration of copyright ownership begins with the individual human creator who did the actual work. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Here, plaintiffs were among the human creators of the works at issue. And, as the court noted in the summary judgment opinion, the parties could have avoided this dispute by contacts that clearly specified ownership. Dkt. 61, at 1. But despite this facial plausibility, plaintiffs' case was substantively weak.

Plaintiffs asserted copyright in eight works. But plaintiffs conceded at summary judgment that two of the eight copyrighted works, the Pre-course Materials, were the initial versions of the course materials and that they belonged to the Academy. The remaining six works, the 2013 Materials, were derivative works based on the Pre-course Materials. So plaintiffs could claim ownership, at most, in those aspects of the 2013 Materials that were original to them. And even then, plaintiffs' rights to create derivative works based on the Pre-course Materials were subject to the approval of the Academy as the owner of the original

5

works. This was a fundamental flaw in plaintiffs' case, which a reasonable litigant should have recognized.

Plaintiffs contend that the case could have turned out differently had plaintiffs' former counsel followed this court's procedural rules at summary judgment. To be crystal clear, plaintiffs did not lose this case because of procedural technicalities. In the first place, this court's summary judgment procedures are not arcane or unusual: the requirement that a party's summary judgment submissions be supported by admissible evidence is utterly routine. But more fundamentally, plaintiffs' case was substantively weak, and plaintiffs made contradictory and unsupported statements to support it. Take, for example, Moffat's insistence that she and other plaintiffs had sole discretion over the development of the course materials. The court rejected this as conclusory, *see Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016), but it was also demonstrably untrue, *see* Dkt. 61, at 4 n.3. Likewise, Moffat claimed that "it was always the understanding of everyone concerned that [plaintiffs] owned the Copyrighted Materials," Dkt. 45, ¶ 29. The court rejected this statement as not made on personal knowledge, *see* Fed. R. Civ. P. 56(c)(4), but this claim, too, was contradicted by the record.[1] Plaintiffs' procedural deficiencies added to the difficulty of resolving this dispute, but the fundamental problem was the substantive weakness of their case.

Plaintiffs also contend that the case involved an unsettled area of law. The court does not quite agree. The central issue in the summary judgment analysis was the work-for-hire

---

[1] *See, e.g.*, Dkt. 33-26, at 7 ("Content and administration of the CEEAA course is maintained on behalf of the SOG by the course Administrators of the course."); Dkt. 49-3, at 4 ("Handouts are property of the Section on Geriatrics. This material may not be reproduced, displayed, modified or distributed without the express prior written permission from the Section on Geriatrics.").

doctrine, which is hardly a new issue. The application of that doctrine to the facts of this case required careful analysis and explanation, as is always the case when the work-for-hire doctrine is invoked outside the context of a written agreement or a formal employment arrangement. But ultimately, plaintiffs case was not a strong one, in light of the concession that the Pre-course Materials were owned by the Academy and the other undisputed facts including that others contributed authorship to the course materials.

This factor tips in favor of the Academy.

### c. Plaintiffs' motivation

The Academy contends that this lawsuit was a personal vendetta, motivated by plaintiffs' desire to get back at the Academy for not allowing them to control the course. Control over the course was part of plaintiffs' motivation, but the court has little actual evidence suggesting that plaintiffs' motivation was improper, so the court declines to consider this factor.

### d. Litigation conduct

Plaintiffs' litigation conduct was wasteful, as their conduct caused unnecessary costs for the Academy. This is a factor that weighs heavily in favor of awarding attorney fees. *See Riviera Distribs.*, 517 F.3d at 929 ("The party responsible for creating excessive legal costs must bear them itself in the end."). The Academy points out several ways in which plaintiffs inflated the legal costs for the Academy. Dkt. 93, at 12-14. The court will discuss three examples.

First, plaintiffs filed a lawsuit against the Academy in New York when they had no basis to believe that New York was a proper forum. Plaintiffs maintain that the New York lawsuit was filed "with the hope of establishing venue in that court." Dkt. 106, ¶ 3. But plaintiffs admitted that the New York proceeding was a "placeholder" lawsuit which they had no intent

7

to actually litigate. Dkt. 59, ¶ 21. Plaintiffs' placeholder lawsuit resulted in unnecessary costs for the Academy. *See, e.g.*, Dkt. 94-1, at 8.

Second, plaintiffs insisted on numerous false factual assertions. For example, plaintiffs claimed that they had sole discretion in developing the course materials, but as discussed above, this was not true. Likewise, plaintiffs claimed that the Academy had no role in creating the course materials, when in fact the Academy and other course instructors who worked for the Academy had contributed in developing the course materials. The Academy incurred unnecessary expenses in rebutting these unsupportable assertions.

Third, plaintiffs were uncooperative in discovery. Plaintiffs did not comply with their discovery obligations until the court threatened to dismiss their claims. *See* Dkts. 13-16. Plaintiffs now argue that they complied with the Academy's discovery requests on a timely basis, but they conceded in their own response to plaintiffs' motion to compel that their productions of documents were late. *See* Dkt. 15.

Plaintiffs' litigation conduct weighs in favor of granting attorney fees.

e. **Relative wealth of parties**

Plaintiffs contend that it would be unjust to award fees against them because they are individuals of limited resources, whereas the Academy will be able to reap the benefits of the course materials. Dkt. 108, at 20-21. A district court can consider the relative wealth of the parties under the right circumstances. But plaintiffs here provide no evidence of their personal resources, and the court will not simply assume that they cannot afford to pay the Academy's fees because they are individuals rather than business entities. The amount of fees at issue here, especially split among plaintiffs, is not inequitable in light of the amount plaintiffs were paid by the Academy for their contributions to the course. The court sees no good reason to think

8

that plaintiffs' resources are so limited that it would be unfair to shift a portion of the Academy's fees to them.

On balance, the discretionary factors favor granting the Academy's motion for attorney fees. The court turns now to the question of the amount of fees.

### 2. Amount of attorney fees

The basic approach to evaluating fees is the lodestar approach, in which the court considers whether the attorney's hourly rate and the hours spent are reasonable.

The hourly rates charged by the Academy's counsel were reasonable. "The best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assessment Techs.*, 361 F.3d at 438. The Academy has paid the rates charged by its counsel, Dkt. 113, ¶ 11, and it seeks no more than the amount it paid. The Academy's counsel also charged their standard rates, *id.*, ¶ 10, which creates a presumption that the rates were appropriate. *See People Who Care v. Rockford Bd. of Educ., Sch.* Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993))).

Another benchmark in evaluating reasonableness of an hourly rate is "the market rate for similarly-skilled attorneys in the community." *Martin v. City of Indianapolis*, 28 F. Supp. 2d 1098, 1103 (S.D. Ind. 1998). Most of the work for the Academy was done by two lawyers, Melinda Giftos and Jordan Corning. Giftos was lead counsel; she was a senior associate who became a partner during the course of the litigation. Corning was a mid-level associate. A more senior partner, Gerard Jensen also billed a few hours, and a student law clerk also worked on the case, although it appears that most of the law clerk's time was not billed to the client. Jensen initially charged $540 and later charged $580.50; Giftos initially charged $270, and

9

after becoming a partner, she charged $360, $400, and $415; Corning charged $270. These rates are consistent with the rates charged by their peers with comparable experience, according to a report published by the American Intellectual Property Law Association. *See* Dkt. 113-1, at 8 (mid $300s to low $500s for a partner with 15 to 24 years of experience and low $300s to mid $400s for a partner with 10 to 14 years of experience), 9 (low $200s to $300s for an associate with less than 5 years of experience). Jensen's rates were slightly above those of his peers in the survey, but not by much. The hourly rates were reasonable.

The number of hours the Academy's counsel spent litigating this case—about 800 hours total—was also reasonable. Plaintiffs point to the fact that their counsel spent only about 500 hours. But this difference "is not worth much standing by itself. If the winning counsel had taken less time, he might not be a position to ask for attorneys' fees as the prevailing party's representative." *Mohr v. Chi. Sch. Reform Bd. of Trs. of Bd. of Educ. of the City of Chi.*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002); *see also Catalan v. RBC Mortg. Co.*, No. 05-cv-6920, 2009 WL 2986122, at *5 (N.D. Ill. Sept. 16, 2009) ("[T]he court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008))). In this case, plaintiffs' counsel was not diligent in responding to discovery requests and did a shoddy job of presenting the summary judgment evidence, so it is not surprising that counsel for the Academy spent more time than plaintiffs to prepare and present its case.

Plaintiffs raise two main objections to the amount of fees. First, plaintiffs contend that the Copyright Act's fee-shifting provision does not permit recovery of fees incurred before filing a lawsuit. The court disagrees. The Academy may recover fees for attorney work performed

before the filing of the complaint. *See Brownmark Films LLC v. Comedy Partners*, No. 10-cv-1013, 2011 WL 6002961, at *8 (E.D. Wis. Nov. 30, 2011). A dispute often begins and parties start incurring legal fees before a complaint gets filed. The Academy's billing records show that this is the case here.

Second, plaintiffs contend that the Academy's legal team was unnecessarily "top-heavy," which is that too much of the work was performed a partner, Giftos, who should have delegated more work to her subordinates. This complaint rings hollow when plaintiffs' case was litigated by one attorney with about 25 years' experience, who apparently delegated nothing and whose hourly rate is not disclosed. More important, there is nothing inappropriate about Giftos herself doing most of the work on this case. After all, she was an associate attorney when the case began, and as the case progressed, she delegated work to a less-experienced associate and a student law clerk. The court sees nothing inappropriate about enlisting the help of Jensen, a more senior lawyer, particularly because Jensen billed only 6.6 hours on the case. Giftos's role as the managing partner of the Madison office of her law firm is immaterial, as is the fact that her firm recently merged with a larger firm. All that matters is that Giftos and her colleagues billed at reasonable rates and put in a reasonable number of hours.

But the court will not award the full amount requested by the Academy. The first reduction is for fees related to the Academy's counterclaims. The Academy agreed to pay its own fees as to its counterclaims as part of the stipulation that dismissed the counterclaims. Dkt. 88, at 1 ("Each party shall bear its own costs, expenses and attorney fees with regard to those counterclaims."). And the Academy concedes in its reply brief that it cannot recover attorney fees for work performed for its counterclaims. Dkt. 114, at 18. So the court will reduce the fee amount to remove the fees incurred for the counterclaims.

The Academy has submitted corrected billing records which eliminate fees for work on the counterclaims after December 22, 2016, the date the court dismissed plaintiffs' copyright claims, thereby leaving only the counterclaims for trial. On the basis of the corrected records, the Academy requests fees of $303,140.20. (The court found a minor discrepancy, in the amount is $26.90, between the billing records and the Academy's request. The court goes with the billing records, which is the smaller amount.)

But the corrected billing records still show fees incurred after December 22, 2016, that appear to be attributable to the counterclaims. *See, e.g.*, Dkt. 113-2, at 18 (entry for December 30, 2016). A significant amount of the work after December 22 relates to the counterclaims, and this work is partly block-billed with work that would arguably recoverable. The court will simply eliminate the all fees incurred after December 22, 2016, in the amount of $23,344.50. With this reduction, the fees would amount to $279,795.70.

The next question is how to handle fees attributable to the counterclaims that were incurred before December 22, 2016. The Academy concedes that it has not segregated the fees for counterclaims from the fees for copyright infringement claims before the court's summary judgment decision. The Academy has a point that completely segregating the fees for the counterclaims would have been impossible: the counterclaims were mostly mirror images of copyright infringement claims, and thus much of the work on the counterclaims would have been necessary for the copyright claims anyway. But still some adjustment is appropriate, because the counterclaims undoubtedly added some effort.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v.*

12

*City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). "[T]he amount of itemization and detail required is a question for the market," and "[a] court should not require any more than the level of detail paying clients find satisfactory." *Garcia v. City of Chi.*, No. 01-cv-8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003). The Academy's billing entries are reasonably detailed. The court has reviewed the billing entries and it concludes that it would be reasonable to reduce the Academy's fees by five percent to reflect work on the Academy's counterclaims before December 22. This makes the adjusted amount $265,805.92.

The court will make one more adjustment, to reflect the Academy's share of responsibility for the failure to settle the ownership issue up front with clear written contracts. The Supreme Court authorizes a district court to consider "the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534). Proper considerations of compensation and deterrence are not limited to those related to the litigation itself. The court has already expressed disapproval of plaintiffs' conduct in the case, but both sides bear some responsibility for the fact that this dispute required court resolution in the first place.

Plaintiffs do not get a free pass on this issue either. They are sophisticated, highly credentialed physical therapists, two of whom serve as faculty at major universities. As experienced and sophisticated teachers and authors, plaintiffs should have been alert to the ownership issues posed by their work for the Academy. It should go without saying that the Academy should also have looked after its own interests. After all, it took the precaution of hiring a lawyer to register the trademark related to the course, CEEAA. Why not exercise the same level of care with respect to its ownership of the course materials?

A district court may not increase an award of attorney fees as a punishment to the losing party. *See Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he emphasis on ascertaining a 'reasonable' fee also suggests the absence of a penalty beyond the punitive or deterrent policies taken into consideration in the decision to award fees in the first instance."); *see also* Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.10. But to provide an appropriate incentive for parties to resolve copyright ownership issues in advance, and to provide an appropriate deterrent for failing to do so, the court concludes that it is appropriate to substantially reduce the Academy's fee award in this case. There is no formula for determining the amount of that reduction. Both sides bear responsibility for this particular failure, and plaintiffs' conduct of this case also warrants disapprobation. Accordingly, the court will reduce the Academy's otherwise recoverable fees by one-third. The fees awarded are thus $177,203.95.

**B. Sanctions under 28 U.S.C. § 1927**

The Academy also requests sanctions against plaintiffs' former counsel under 28 U.S.C. § 1927 for improperly multiplying proceedings. Dkt. 93, at 14. The court will decline to sanction plaintiffs' former counsel.

Under § 1927, a district court may sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." Unlike a sanction imposed under Federal Rule of Civil Procedure 11, a sanction under § 1927 is not limited to cases involving frivolous claims or subjective bad faith. *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016). Instead, the standard under § 1927 is "objective bad faith," which the Seventh Circuit explained this way:

> If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the

> conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law . . . .

*Id*. (quoting *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)). On the other hand, "[s]imple negligence" by the attorney does not warrant a sanction under § 1927. *Id*. at 708. And a district court must be mindful that "sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case.'" *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)).

Here, the Academy contends that plaintiffs' former counsel should be sanctioned for his failure to adhere to this court's procedures on summary judgment and for failure to cooperate during discovery. These errors were inexcusable, but the court has already taken appropriate actions in response to them at summary judgment. Fee-shifting provided under the auspices of the Copyright Act also provides the Academy with an appropriate remedy. And the errors of counsel reflect something akin to negligence; they do not rise to the level of objective bad faith. The Academy's request for sanctions on plaintiff's former counsel is denied.

Another issue on fees warrants brief discussion. Plaintiffs submitted a letter indicating that plaintiffs are now represented by new counsel and that their old counsel now has limited involvement. Dkt. 115. They ask these facts be considered by the court. The court will grant plaintiffs' request because the court has considered the new facts presented in plaintiffs' letter. But the new facts do not change anything of substance. Plaintiffs must pay a share of the Academy's attorney fees despite their retention of new counsel.

## C. Costs

The Academy has submitted a bill of costs and seeks to recover $8,497.01. Dkt. 92. Plaintiffs object to part of the costs for copying deposition exhibits, which account for $2,476.09. Dkt. 98. Plaintiffs argue that these costs were unnecessary because the Academy made duplicative, convenience copies of deposition exhibits when in fact the Academy already had those exhibits. *Id*. at 2 (relying on *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445 (7th Cir. 1998)). But the court is satisfied that the documents at issue were initial materials—i.e., first copies of deposition exhibits—prepared by the Academy, Dkt. 103, ¶ 4. The court overrules plaintiffs' objection and awards the Academy's costs as requested, in the amount of $8,497.01.

ORDER

IT IS ORDERED that:

1. Defendant Academy of Geriatric Physical Therapy's bill of costs, Dkt. 92, is GRANTED. Defendant is entitled to costs in the amount of $8,497.01.

2. Defendant's motion for attorney fees, Dkt. 93, is GRANTED in part and DENIED in part. Defendant is entitled to attorney fees in the amount of $177,203.95. Defendant's request for sanctions under 28 U.S.C. 1927 is DENIED.

3. Plaintiffs Marilyn Moffat, Karen Kemmis, Danielle Parker, and Mark Richards's motion for leave to file a sur-reply, Dkt. 115, is GRANTED. The court has considered the additional facts presented in plaintiffs' motion; a formal sur-reply is unnecessary.

Entered September 20, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge